NO. 12-07-00416-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




ROBERT TURNER,
§
 APPEAL FROM THE 3RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






MEMORANDUM OPINION


 Robert Turner appeals his conviction for aggravated assault on a public servant with a
deadly weapon, for which he was sentenced to imprisonment for life and a ten thousand dollar
fine. Appellant raises six issues on appeal. We modify the judgment and, as modified, affirm.


Background

 Appellant, an inmate, was charged by indictment with aggravated assault on a public
servant with a deadly weapon and pleaded "not guilty." The matter proceeded to a jury trial. 
The record of the trial (1) reflects that correctional officer April Colburn was in the process of
letting inmates go to the day room when Appellant grabbed her from behind, threw her to the
ground, and slit her throat. (2) The jury found Appellant "guilty" as charged and assessed his
punishment at imprisonment for life. The trial court sentenced Appellant accordingly, and this
appeal followed.


Failure to Sua Sponte Declare a Mistrial

 In his first issue, Appellant argues that the trial court abused its discretion by failing to
sua sponte declare a mistrial following irrelevant, inflammatory, and highly prejudicial testimony
offered by witness for the State Shelly Cote. Cote was a nurse who treated Colburn following
the attack. At trial, the State questioned Cote concerning how she felt after seeing the injuries
Colburn sustained. Cote responded, "This crime had to be the most premeditated -[.]" 
However, Cote's response was cut short by Appellant's objection that the question called for
speculation. The trial court sustained Appellant's objection. 

 The State next asked Cote how the attack affected her personally. Cote responded as
follows:


 For about eight months[,] I could not sleep. This was such a horrific set of events that
it set me way back. I had trouble sleeping. I had trouble dealing with all of this. It was just such
a horrific crime. I had to go down to the cell to deliver papers to Lieutenant Hatt, use of force
papers, and I didn't realize whenever I walked up to the cell that I would see what I saw, you
know, where he had tied a sheet so that he could get behind the sheet and hide, the razor blades
that he had taped to the wall so that he could slice his wrists so that he could go to Skyview, all
the little things that he had done in preparation of doing this crime and all the things that he did
in preparation of slicing this girl's throat. It was so planned, it was so deviant that he would do
those things to this girl. I just -- It had just took me down, took me way down that anybody
would have the criminal mind. And I deal with these inmates every day, every day, every day.


Appellant objected, stating, "I think it's getting beyond her --[,]" but the trial court interrupted
Appellant and instructed the State to "move on." Appellant made no attempt to clarify his
objection, obtain a ruling, obtain an instruction to disregard, or move for mistrial.

 A trial judge may sua sponte declare a mistrial for "manifest necessity." See Hill v.
State, 90 S.W.3d 308, 317 (Tex. Crim. App. 2002). However, Appellant has not cited to, nor
are we aware of, any authority holding that a trial court's failure to sua sponte declare a mistrial
is reversible error. Rather, in order for us to consider Appellant's complaint on appeal, the
record must show that Appellant preserved his complaint by a timely request, objection, or
motion and obtained a ruling from the trial court. See Tex. R. App. P. 33.1(a); Hull v. State, 67
S.W.3d 215, 217 (Tex. Crim. App. 2002). Since Appellant did not request a mistrial, he has not
preserved that issue on appeal. See Nanez v. State, 179 S.W.3d 149, 151 (Tex. App.-Amarillo
2005, no pet.); Dominguez v. State, 125 S.W.3d 755, 763 (Tex. App.-Houston [1st Dist.] 2003,
pet. ref'd). Appellant's first issue is overruled.

 

Exclusion of Evidence

 In his second issue, Appellant argues that the trial court erred by not allowing him to
fully examine and cross examine correctional officer James Crozier concerning Appellant's
treatment by other correctional officers following the attack on Colburn because the prosecution
had "opened the door" with regard to these subsequent events. Specifically, Appellant contends
that the trial court improperly limited his cross examination of Crozier with regard to matters
following the attack to the point in time at which Appellant was secured in his cell. In his brief,
Appellant sets forth that the following exchange amounts to error by the trial court: (3)


 [APPELLANT'S COUNSEL]: Your Honor, may we approach briefly?

 

 THE COURT: Is this something we need on the record?

 

 [APPELLANT'S COUNSEL]: Yes. 


 THE COURT: All right. Bailiff, if you will take the jury to the jury room please.


 (Open court, defendant present, no jury)


 THE COURT: Okay. Let the record reflect that the jury is outside the court room. Yes, ma'am?


 [APPELLANT'S COUNSEL]: Your Honor, again I'm just approaching or asking for a hearing
outside the presence of the jury regarding the State's motion in limine. The witness is again
another witness who did not witness the assault. He's testified to acts by and against the accused
following the assault. Again I'm asking, I believe that the right to confront the witness and cross
examine the witness on the items in his statement, what he witnessed, what happened at the cell. 
And further this is a witness, the person of rank that Ms. Cote reported another incident to. So
I'd like to limit it to those, but I would like to be able to confront and cross examine the witness,
to examine first his knowledge of all the events in context with what the State's already asked
him about. And to also show if there's any bias or motive in favor of the prosecution. And just
to confront and cross examine this witness to the acts he's already testified to, but specifically
just the gassing, then anyone striking him, or his knowledge.


 THE COURT: Well, let me ask, folks. This is the actual alleged assault by the inmate on the
officer, okay, her treatment afterwards for reasons to show the seriousness or not seriousness,
okay, and then the events up until the time the alleged offender was secured. Okay? Anything
after that would be irrelevant. Now then, I'll ask this question. Is there a contention on the
defense['s] part that there was wrongdoing on behalf of this officer while they secured the inmate
after the alleged offense against the officer?


 [APPELLANT'S COUNSEL]: Your Honor, I don't believe -- I believe that several officers went
to discipline, but I do not - 


 THE COURT: That's my point. If there was any - The State's opened the door as to as far as
the arrest of the inmate. I use arrest, but to get him secured in his cell or outside the cell. After
that I think the relevance ends. Now then, there may be a whole new different ball game where
some officer did this or someone stuck him in the eye or whatever. But anything after that I think
is irrelevant. 


 [APPELLANT'S COUNSEL]: Okay. Well, your Honor, I think that, for the most part, he was
there during this so I want to ask him of that, I mean what he witnessed and what he reported. 
But also what happened was the stick in the eye incident was in the infirmary later and that was
supposed to be reported there.


 [PROSECUTING ATTORNEY]: Your Honor, that is irrelevant. 


 THE COURT: I'm going to rule with the State on that. I'll sustain the objection for those. 


 THE COURT: Anything is relevant up and to the time the inmate was secured. Okay? And I
believe from his testimony he's testified that the inmate was taken to the floor; there he was
secured, and taken to the infirmary. Anything after that - ... admittedly, there may be a different
offense here or there may be a different crime here. But for our purposes in this trial anything
after the time that he was initially secured or secured, rather, I'm going to rule is irrelevant. All
right.


 In order to preserve error regarding a trial court's decision to exclude evidence, the
complaining party must comply with Rule of Evidence 103 by making an "offer of proof" that sets
forth the substance of the proffered evidence. Tex. R. Evid. 103(a)(2). Rule 103(a)(2) provides,
"Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right
of the party is affected, and ... the substance of the evidence was made known to the court by offer,
or was apparent from the context within which questions were asked." Id. The offer of proof may
consist of a concise statement by counsel, or it may be in question and answer form. See Warner
v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). If in the form of a statement, the proffer "must
include a reasonably specific summary of the evidence offered and must state the relevance of the
evidence unless the relevance is apparent, so that the court can determine whether the evidence is
relevant and admissible." Id. "The primary purpose of an offer of proof is to enable an appellate
court to determine whether the exclusion was erroneous and harmful." Mays v. State, No.
PD-0670-07, 2009 WL 1066936, at *4 (Tex. Crim. App. Apr. 22, 2009). "A secondary purpose
is to permit the trial judge to reconsider his ruling in light of the actual evidence." Id. 

 In his brief, Appellant states his second issue broadly, complaining that he was not
permitted to fully cross examine multiple unnamed witnesses. However, in his briefing of his
second issue, Appellant confines his argument to the aforementioned statement made by the trial
court at the outset of Appellant's cross examination of Crozier. Appellant made no offer of proof
with regard to Crozier's testimony. Therefore, Appellant has not preserved error with regard to
the trial court's evidentiary rulings that may have limited the testimony Appellant was entitled
to elicit from Crozier. See Tex. R. Evid. 103(a)(2). To the extent Appellant sought to argue that
the trial court's determination of relevancy improperly limited the testimony he was permitted
to elicit from other witnesses, Appellant has waived the issue for his failure to properly brief it. 
See Tex. R. App. P. 38.1(h). Appellant's second issue is overruled.


Lesser Included Offense

 In his third issue, Appellant argues that the trial court improperly denied his request for
inclusion in the court's charge of the lesser included offense of assault on a public servant
without a weapon. An offense is a lesser included offense if (1) it is established by proof of the
same or less than all the facts required to establish the commission of the offense charged; (2)
it differs from the offense charged only in the respect that a less serious injury or risk of injury
to the same person, property, or public interest suffices to establish its commission; (3) it differs
from the offense charged only in the respect that a less culpable mental state suffices to establish
its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise
included offense. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); see also Hall v. State,
225 S.W.3d 524, 527 (Tex. Crim. App. 2007). 

 Furthermore, a charge on a lesser included offense should be given only when there is
some evidence that would permit a rational jury to find that the defendant is guilty of the lesser
offense but not guilty of the greater. See Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim.
App. 2005); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The State
concedes that assault on a public servant is a lesser included offense of aggravated assault on
a public servant with a deadly weapon. See Irving v. State, 176 S.W.3d 842, 845 (Tex. Crim.
App. 2005) (simple assault may be a lesser included offense of aggravated assault in some
cases); compare Tex. Penal Code Ann. § 22.02(a)(2), (b)(2)(B) (Vernon Supp. 2008), with
Tex. Penal Code Ann. § 22.01(a), (b)(1) (Vernon Supp. 2008). Thus, in our analysis, we will
focus on whether there is any evidence of record that would permit a rational jury to find that the
defendant is guilty of assault on a public servant, but not aggravated assault on a public servant
with a deadly weapon.

 Appellant argues that "several prosecution witnesses observed the incident, but did not
observe [Appellant] use a weapon." Specifically, Appellant directs us to the testimonies of
inmate Stanley Bell, inmate Michael Dixon, and Colburn. Bell testified that he did not actually
see the weapon, but that Appellant cut Colburn. Dixon stated that he did not see what Appellant
had in his hand. Finally, Colburn testified that she did not actually see a razor or weapon. None
of the testimony offered by these witnesses supports that Appellant is guilty of assault on a
public servant, but not aggravated assault on a public servant with a deadly weapon. Each
witness denied seeing a weapon. However, no witness testified that he or she saw Appellant
commit the assault without use of a weapon.

 Appellant further argues that Appellant's fingerprints were not found on the razor blades
that were discovered near the scene. Appellant's assessment is accurate. Criminal investigator
Johnny Thomas testified that the razor blade itself was too small for him to be able to collect a
fingerprint from it by which a person could be identified. Moreover, Appellant contends that
Colburn's blood did not match any of the samples taken from Appellant's clothing for testing
by the crime lab. This assessment is also accurate. However, neither of these facts support that
Appellant is guilty only of assault of a public servant. 

 Based upon our review of the record, we have not uncovered any evidence that would
permit a rational jury to find that the defendant is guilty of assault on a public servant, but not
aggravated assault on a public servant with a deadly weapon. Therefore, we hold that the trial
court did not err in denying Appellant's request for a lesser included offense of assault on a
public servant without a weapon. Appellant's third issue is overruled.


Motion to Suppress

 In his fourth issue, Appellant argues that the trial court erred in denying his motion to
suppress his video taped confession. Specifically, Appellant contends that the State failed to
meet its burden of proving that his confession was made voluntarily. 

 

Standard of Review

 We review a trial court's ruling on a motion to suppress evidence under a bifurcated
standard of review. See Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007);
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court's decision to admit
evidence of a confession will be overturned on appeal only where a flagrant abuse of discretion
is shown. See Delao v. State, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). In reviewing the
trial court's decision, we do not engage in our own factual review. See Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.-Fort
Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony. Wiede v. State, 214 S.W.3d 17, 24-25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified
on other grounds, State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give
almost total deference to the trial court's rulings on (1) questions of historical fact, even if the
trial court's determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility
and demeanor. See Amador, 221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108-09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But
when application of law to fact questions do not turn on the credibility and demeanor of the
witnesses, we review the trial court's rulings on those questions de novo. See Amador, 221
S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652-53.

 In other words, when reviewing the trial court's ruling on a motion to suppress, we must
view the evidence in the light most favorable to the trial court's ruling. See Wiede, 214 S.W.3d
at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent
on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither
party timely requested findings and conclusions from the trial court, we imply the necessary fact
findings that would support the trial court's ruling if the evidence, viewed in the light most
favorable to the trial court's ruling, supports those findings. See Kelly, 204 S.W.3d at 819; see
Amador, 221 S.W.3d at 673; Wiede, 214 S.W.3d at 25. We then review de novo the trial court's
legal ruling unless the implied fact findings supported by the record are also dispositive of the
legal ruling. See Kelly, 204 S.W.3d at 819.

Voluntariness of Confession

 Under Texas Code of Criminal Procedure, article 38.21, a statement of an accused may
be used in evidence against him if it appears that the same was freely and voluntarily made
without compulsion or persuasion. (4) See Tex. Code Crim. Proc. art 38.21 (Vernon 2005). The
United States Supreme Court has held that the determination of whether a confession was
voluntarily rendered must be analyzed by examining the totality of the circumstances. See
Delao, 235 S.W.3d at 239 (citing Arizona v. Fulminante, 499 U.S. 279, 285-86, 111 S. Ct.
1246, 1252, 113 L. Ed. 2d 301 (1991)). This same analysis is applicable to cases involving a
confession made by a person who has a mental illness. 

 Claims of involuntariness under article 38.22 can be, but need not be, predicated on
police overreaching, and they could involve the sweeping inquiries into the state of mind of a
criminal defendant who has confessed found in Connelly that are not of themselves relevant to
due process claims. Oursbourn v. State, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008). Article
38.22 is aimed at protecting suspects from police overreaching. Id. But section 6 of that article
may also be construed as protecting people from themselves because the focus is upon whether
the defendant voluntarily made the statement. Id. The behavior of the police may or may not
be a factor. Id. A confession given under the duress of hallucinations, illness, medications, or
even a private threat, for example, could be involuntary under article 38.21 and the Texas
confession statute. Id.  Likewise, evidence of an individual's diminished mentality would have
some bearing on whether his confession is admissible, but is not conclusive of involuntariness;
rather it is a fact to be considered. See Delao, 235 S.W.3d at 240 (citing Bizzarri v. State, 492
S.W.2d 944, 946 (Tex. Crim. App. 1973)). Rather, in order to invalidate a confession, a
defendant's mental impairment must be so severe that he is incapable of understanding the
meaning and effect of his confession. See Daniels v. State, No. 10-07-00115-CR, 2008 WL
5093380, at *2 (Tex. App.-Waco Dec. 3, 2008, no pet.) (mem. op., not designated for
publication); see also Delao, 235 S.W.3d at 240 (noting that the court of appeals had applied this
standard).

 In the instant case, Appellant argues that since the interview in which he confessed was
conducted at the Skyview Unit of the Texas Department of Criminal Justice ("TDCJ") (5), the State
has not met its burden of proving that his confession was voluntary. In reaching its conclusion
of law that Appellant's statement was voluntarily given, the trial court made the following
findings of fact in accordance with article 38.22, section 6:


 1. Defendant was in a psychiatric unit of TDCJ when the statement was given.

 

 2. Defendant was on no psychiatric medications when the statement was given. 

 

 3. Defendant was properly admonished of his rights prior to the statement.

 

 4. Defendant was not threatened in any way to induce the statement.

 

 5. Defendant was not promised anything to induce the statement.

 

 6. Defendant was able to calmly and rationally discuss the event.

 

 7. Two additional statements were given and recorded at other times. Those
statements were not considered in this hearing.


Based on our review of the record, we conclude that the aforementioned findings of fact are
supported by the record. Furthermore, having considered the totality of the circumstances, we
cannot conclude that Appellant's mere presence in a psychiatric facility is indicative, without
more, that his mental impairment was so severe that he was incapable of understanding the
meaning and effect of his confession. Rather, we conclude based on the totality of the
circumstances that the trial court's determination that Appellant's confession was made
voluntarily was not an abuse of its discretion. As such, we hold that the trial court did not err
in overruling Appellant's motion to suppress. Appellant's fourth issue is overruled.


Evidence Concerning Loss of "Good Time"

 In his fifth issue, Appellant argues that the trial court erred in refusing to permit
testimony at his trial on punishment regarding his loss of good time accumulated during his
incarceration at TDCJ because the State "opened to the door" to such testimony. The State
argues that Appellant did not preserve error. We agree.

 To preserve a complaint for appellate review, the record must reflect that the appellant
made a complaint to the trial court by a timely request, objection, or motion stating the grounds
for the ruling that the party sought from the trial court with sufficient specificity to make the trial
court aware of the complaint. See Tex. R. App. P. 33.1(a). The issue is not whether the
appealing party is the state or the defendant or whether the trial court's ruling is legally "correct"
in every sense, but whether the complaining party on appeal brought to the trial court's attention
the very complaint that party is now making on appeal. See Martinez v. State, 91 S.W.3d 331,
336 (Tex. Crim. App. 2002). Where an appellant's issue on appeal does not comport with his
complaint made to the trial court, error, if any, is not preserved. See Turner v. State, 87 S.W.3d
111, 117 (Tex. Crim. App. 2002).

 In the instant case, Appellant argued to the trial court that the evidence of lost "good
time" was admissible either as mitigating evidence or as a "[circumstance] of the offense for
which [A]ppellant] is being tried." On appeal, Appellant seeks to argue that the evidence is
admissible because the State "opened the door." Since the issue Appellant now argues on appeal
does not comport with his complaint to the trial court, we hold that Appellant has not preserved
error. Appellant's fifth issue is overruled.


Errors on the Face of the Judgment

 In his sixth issue, Appellant argues that the judgment contains material errors on its
face--namely, the judgment incorrectly sets forth the date of the offense and the nature of
Appellant's plea to the offense charged. Appellant urges that we reform the judgment to
accurately reflect the facts of the case. Our review of the record indicates that the date of the
offense as alleged was August 20, 2005 and that Appellant pleaded "not guilty" to the allegations
in the indictment. As such, the trial court's judgment will be modified to accurately reflect these
facts. See Tex. R. App. P. 43.2(b); Bigley v. State, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). 
Appellant's sixth issue is sustained.


Disposition

 We have sustained Appellant's sixth issue. Having done so, we modify the trial court's
judgment to reflect that the date of the offense as August 20, 2005 and that Appellant pleaded
"not guilty" to the allegations in the indictment. Having overruled Appellant's issues one
through five, we affirm the trial court's judgment as modified.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered July 31, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.






















(DO NOT PUBLISH)
1. Appellant has not challenged the sufficiency of the evidence.
2. Several witnesses testified that Appellant used a razor blade to slit Coburn's throat. Other witnesses
stated that they could not see if Appellant used any sort of weapon to inflict these injuries on Coburn.
3. During Cote's testimony, the parties argued concerning the relevance of an incident involving an officer's
poking Appellant's eye while Appellant was waiting to receive medical treatment. The trial court sustained the
State's objection to such testimony and Appellant made an offer of proof, which comprised a written statement made
by Cote in an administrative case against the offending officer. Appellant makes no reference to this offer of proof
in his briefing of his second issue. 
4. A defendant may make a claim that his statement was not freely and voluntarily made under several
different theories: (1) Texas Code of Criminal Procedure, article 38.22, section 6 (general voluntariness); (2)
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), as expanded in Texas Code of Criminal
Procedure, article 38.22, sections 2 and 3 (the Texas confession statute); or (3) the Due Process Clause. See
Oursbourn, 259 S.W.3d at 169. In the instant case, Appellant has failed to specify the theory underlying his claim
that his statement was not voluntarily given. See Tex. R. App. P. 38.1(h). However, we interpret Appellant's brief
liberally in the interest of justice. See Tex. R. App. P. 38.1(e), 38.9. In light of the fact that Appellant has not made
mention of Miranda or made allegations of coercive police activity, see Colorado v. Connelly, 479 U.S. 157, 167,
107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986), we will address Appellant's issue under article 38.22, section 6.
5. Appellant was transferred to Skyview after he cut his wrists following the attack on Colburn. Skyview is a
psychiatric facility.